IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Deborah Tapp, | ) | C/A No. 3:15-4799-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Minnesota Life Insurance Co. and | ) | |
| John Doe, Branch Manager, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | **O R D E R** |
| Minnesota Life Insurance Co., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| The Estate of Joel M. Pruitt, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| ———————————————— | ) | |

On September 29, 2015, Plaintiff Deborah Tapp ("Plaintiff") brought this action in the Court of Common Pleas for Lexington County, South Carolina, alleging that she is the rightful beneficiary under a life insurance policy issued to her brother, Joel M. Pruitt ("Decedent"), who died on December 7, 2013. Plaintiff alleges that Defendant Minnesota Life Insurance Co. ("Defendant") has refused to pay her the proceeds of the policy. Plaintiff asserts causes of action for breach of contract (First Cause of Action), bad faith refusal to pay benefits (Second Cause of Action), and violation of the South Carolina Unfair Trade Practices Act (Third Cause of Action). Defendant removed the action to this court on the grounds of diversity jurisdiction on December 2, 2015. On December 9,

2015, Defendant answered Plaintiff's complaint and asserted a third-party complaint against the Estate of Joel M. Pruitt (the "Estate") and a counterclaim against Plaintiff. Defendant contends that Plaintiff was not named as beneficiary under the policy of insurance issued to Decedent when Defendant became the policy provider on October 1, 2010. Defendant claims that, under the current policy, the beneficiary is the Estate. Defendant brings an interpleader action pursuant to Fed. R. Civ. P. 22, stating that it is in doubt as to whether the Estate or Plaintiff is entitled to the payment of proceeds. Defendant does not deny liability in the amount of $131,500.00, plus interest. According to Defendant, Plaintiff and the Estate should be required to interplead and settle between themselves their rights to the benefits payable under the current policy. Defendant also seeks attorney's fees and costs, to be deducted from the policy proceeds.

This matter is before the court on motion for leave to deposit funds and for discharge and motion for summary judgment filed by Defendant on April 14, 2017. Defendant moves the court pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 67 for an order (1) permitting it to deposit the proceeds at issue, less a deduction for its reasonable attorney's fees and costs; (2) discharging it from further liability under its policy; (3) dismissing it from the within action with prejudice; and (4) enjoining the other parties from pursuing further legal action against it. The Estate, through its special administrator, Decedent's son, filed a response to Defendant's motion to deposit interpleader funds on May 4, 2017, in which it objected only to Defendant's demand for attorney's fees and costs. Plaintiff filed responses in opposition to Defendant's motion to deposit interpleader funds and motion for summary judgment on May 5, 2017. Defendant filed replies to the responses on May 18, 2017.



<u>DISCUSSION</u>

A.    <u>Motion to Deposit Interpleader Funds</u>

Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund. <u>Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.</u>, 40 F. A'ppx 767, 769 (4th Cir. 2002). Interpleader is an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund. <u>Id.</u> An interpleader action involves two steps or stages:

> During the first stage, it must be determined whether the stakeholder has properly invoked interpleader. The propriety of interpleader depends on whether the stakeholder "legitimately fears" multiple litigation over a single fund. The Court considers whether: (1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader.

> If interpleader is proper, the Court may direct the funds plus interest to be deposited with the Clerk, dismiss the stakeholder with prejudice and discharge it from all liability with respect to the deposited funds, and prohibit the claimants from initiating or pursuing any action or proceeding against the stakeholder regarding the relevant insurance policy or plan.

> During the second stage, a scheduling order is issued and the case continues between the claimants to determine their respective rights. The claimants engage in the "normal litigation processes, including pleading, discovery, motions, and trial."

<u>Metro. Life Ins. Co. v. Vines</u>, Civ. No. WDQ-10-2809, 2011 WL 2133340, at *2 (D. Md. May 25, 2011) (internal citations omitted).

In this case, the court has jurisdiction of Defendant's interpleader complaint under 28 U.S.C. § 1335. Plaintiff is a resident of Tennessee. Defendant is an insurance company organized and existing under the laws of the State of Minnesota with its principal place of business in St. Paul,

Minnesota. Decedent was at the time of his death a resident of South Carolina. The face value of the policy at issue is $100,000.00, in excess of the $500.00 amount in controversy requirement set forth in § 1335(a).[1] Second, a single fund, the proceeds of Decedent's policy, is at issue. Third, there are adverse claims to the fund: Plaintiff and the Estate both claim to be sole beneficiaries of the proceeds. Fourth, Defendant is actually threatened with multiple liability, as established by the underlying claims of Plaintiff, which are disputed by the Estate. Finally, the court is unaware of equitable concerns that would prohibit the use of interpleader. Accordingly, the court orders the funds to be deposited with the court.

B.     Motion for Summary Judgment

Defendant also moves for summary judgment as to the merits of Plaintiff's causes of action against it.

1.     Breach of Contract. Plaintiff states that Decedent designated her as beneficiary in an earlier policy issued by Unum Life Insurance Company ("Unum") through Decedent's employer effective September 1, 2001. Plaintiff claims Defendant is a successor entity that breached the Unum contract by failing to honor the beneficiary designated at the time Decedent obtained the Unum policy. Plaintiff contends Defendant has attempted to impose an additional term that the parties did not agree upon originally, and that Defendant is bound by the terms of the policy issued by Unum.

In order to recover for breach of contract, a plaintiff must allege and prove (1) the existence of a contract, (2) breach of the contract, and (3) damages caused by the breach. Consignment Sales,

---

[1] The policy also provided a $25,000.00 anti-inflation benefit, a $5,000.00 education benefit, and a $1,500.00 spousal education benefit, a total death benefit of $136,500.00.

4

*mbs*
*p. 4*

LLC v. Tucker Oil Co., 705 S.E.2d 73, 76 (S.C. Ct. App. 2010) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)). A designation of beneficiary form naming Plaintiff as beneficiary appears in conjunction with the Unum policy issued to Decedent on September 1, 2001. See ECF No. 56-5. A subsequent policy issued by American General Assurance Company ("American General") on June 1, 2007, represents a new "contract between American General and" Decedent. ECF No. 56-6, 2. With respect to a named beneficiary, the American General policy specifically provides that American General would "use the beneficiary designation of record as provided" to Unum. ECF No. 56-6, 5. Thus, the designation of Plaintiff as beneficiary was valid between September 1, 2001, and September 30, 2010.

Defendant's policy provides coverage effective October 1, 2010. ECF No. 56-7, 2. Defendant's policy further provides:

> We will pay accidental death and accidental death related benefits to your named beneficiary. You may name one or more beneficiaries. If there is more than one beneficiary, each will receive an equal share, unless you have requested another method in writing. . . . If there is no beneficiary, or if you do not name one, we will pay the accidental death and accidental death related benefits to your lawful spouse, otherwise to the duly appointed representative of your estate.

ECF No. 56-7, 7.

In this case, three discrete contracts of insurance existed as between Decedent and the various insurers. American General incorporated by reference the named beneficiary included with the Unum policy, that being Plaintiff. However, there is no evidence that Defendant similarly agreed to incorporate into its contract the designation of Plaintiff as beneficiary. Although a contract existed between Defendant and Decedent, Plaintiff has not established that Defendant breached the contract.



2.     Bad faith refusal to pay benefits. Plaintiff argues that her bad faith refusal to pay benefits cause of action is viable because there is a genuine dispute as to whether Defendant acted wrongfully "by unilaterally modifying the terms of the contract, by not requesting existing beneficiary designations, and by not accepting receipt of prior beneficiary designations with knowledge that its actions were in violation of the laws of the State of South Carolina." Pl.'s Reply in Opp. To Def. Minn. Life Ins. Co.'s Mot. For Sum. Jud., 11 (ECF No. 64).

The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. BMW of North Am. LLC v. Complete Auto Recon Servs., Inc., 731 S.E.2d 902, 907 (S.C. Ct. App. 2012) (citing Crossley v. State Farm Mut. Auto. Ins. Co., 415 S.E.2d 393, 396–97 (S.C. 1992)). However, where an insurer has a reasonable ground for contesting a claim, there is no bad faith. Id. (citing Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 462 (2004)). This good faith obligation includes an insurer's duty to investigate a claim. Id. (citing Flynn v. Nationwide Mut. Ins. Co., 315 S.E.2d 817, 820 (S.C. Ct. App.1984)).

In this case, Defendant issued a separate contract of insurance that required the insured to name a beneficiary, and provided that, if no beneficiary were named, death benefit proceeds would be paid into the estate of the insured. Contrary to Plaintiff's assertions, Defendant was not bound by the provisions of the Unum policy. The court concludes that Defendant has not acted in bad faith or unreasonably with respect to Plaintiff's claim that she is entitled to death benefit proceeds.

3.    South Carolina Unfair Trade Practices Act. Under S.C. Code Ann. § 39-5-140, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages." Under S.C. Code Ann. § 39-5-20, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 39-50-40(c), however, exempts from coverage all unfair trade practices regarding the business of insurance. This is because the Insurance Trade Practices Act is intended to regulate all unfair trade practices in the business of insurance. Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co., 868 F. Supp. 128, 131 (D.S.C. 1994) (interpreting section 39-5-40(c)); see also Lewis v. Omni Indemnity Co., 970 F. Supp. 2d 437, 451 (D.S.C. 2013) (noting that the Unfair Trade Practices Act does not "apply to unfair trade practices covered and regulated" under the South Carolina Insurance Trade Practices Act).

* * *

Courts have determined that "the very purpose of the interpleader action would be utterly defeated" if claims such as those espoused by Plaintiff could carry forward. See, e.g., Commerce Funding Corp. v. S. Fin. Bank, 80 F. Supp. 2d 582, 585 (E.D. Va. 1999). In Commerce Funding, the district court explained:

> The entire purpose of the interpleader action is to shield the uninterested stakeholder from the costs of unnecessary, multiple litigation. . . . Although a factual dispute may exist as to the rightful ownership of the fund, that dispute does not preclude the granting of summary judgment in favor of the interpleader. It is in the very nature of an interpleader action that two or more parties claim rights to certain money or property. What is undisputed is that the stakeholder . . . has no interest in the stake, and that a real controversy exists as to who does.

*Id.*

Defendant has no interest in the death benefit proceeds. Plaintiff's claim that the beneficiary designation form included with the Unum policy should have been recognized as valid by Defendant simply supports her argument that she has right to the proceeds based upon Decedent's demonstrated prior intent. Her claim that Defendant acted in bad faith because it has determined not to accept previous designations likewise goes to the merits of her claim of entitlement to the death benefit proceeds. Stated differently, Plaintiff's arguments regarding Defendant's conduct "beg the question" of who has rightful ownership of the proceeds. See Commerce Funding, 80 F. Supp. 2d at 585. Defendant is entitled to judgment as a matter of law.

C.     Attorney's Fees and Costs

Defendant seeks reasonable attorney's fees and costs based on the "litigious and unreasonable behavior of the Plaintiff." ECF No. 68, 10. Defendant argues that it expended considerable effort locating Decedent's son and having him appointed as special administrator for the Estate. Defendant seeks attorney's fees and costs of approximately $53,125.00, to be withheld from the death benefit proceeds. The Estate contends that withholding of attorneys' fees and costs unfairly punishes the Estate, should it prevail. Plaintiff contends that Defendant should be precluded an award of from attorney's fees and costs because it is not a disinterested stakeholder. See Metro. Life Ins. Co. v. Mitchell, 966 F. Supp. 2d 97 (E.D.N.Y. 2013).

The court denies Defendant's motion for attorney's fees and costs without prejudice pending resolution of the matter. Defendant is granted leave to reassert its claim for attorney's fees and costs at that time.

<u>CONCLUSION</u>

For the reasons stated, Defendant's motion to deposit interpleader funds and for discharge (ECF No. 56) is **granted**. The funds will accrue interest payable to the ultimate beneficiary at the greater of 4% or the minimum percentage required by state law, whichever is greater, as set forth in the policy issued by Defendant to Decedent. ECF No. 56-7, 5. The court concludes that it is appropriate to discharge and dismiss Defendant with prejudice and enjoin the remaining parties from pursuing legal action against Defendant with respect to the death benefit proceeds at issue.

Defendant's motion for summary judgment (ECF No. 57) also is **granted**. The court expresses no opinion as to the merits of Plaintiff's arguments that Decedent's intent was for her to receive the death benefit proceeds at issue.

**IT IS SO ORDERED**.

Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

June 29, 2017

9